UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **J.C.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-1138** |
| **FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY** | **SECTION: "J" (3)** |

## REPORT AND RECOMMENDATION

Plaintiff timely filed this action for judicial review[1] after the Social Security Administration (the "Administration") issued a final denial of her claim for disability insurance benefits under Title II of the Social Security Act (the "SSA"), 42 U.S.C. §§ 416(i) and 423, *et seq.*[2] Plaintiff asks the Court to reverse the Administrative Law Judge's ("ALJ") holding that Plaintiff is not entitled to the benefits she seeks and remand this matter for further administrative proceedings.[3] The Administration, via Commissioner Frank Bisignano,[4] urges the Court to affirm the denial of benefits and dismiss this case.[5] Pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B), this matter was referred to the undersigned United States Magistrate Judge. Having carefully considered the parties' briefing and the administrative record[6] in the light of the

---

[1] *See* 42 U.S.C. § 405(g).
[2] R. Doc. 1.
[3] R. Docs. 9, 16.
[4] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit because of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[5] R. Doc. 13.
[6] R. Doc. 3.

applicable law, it is recommended that Plaintiff's appeal be denied and this complaint dismissed with prejudice.

I.   **Background**

Plaintiff is a 55-year-old female.[7] She has at least a high school degree and work experience as a mortgage sales loan broker, fast food supervisor, and lounge manager.[8] In November 2018, Plaintiff applied for disability insurance benefits asserting that cervical disc disease, mild lumbar scoliosis and osteoporosis, effects of pelvic fracture, right wrist tendinitis/de Quervain's tenosynovitis, and obesity rendered her disabled as of March 7, 2007.[9] After the Administration denied her application, a hearing to review the claim was held before an ALJ at Plaintiff's request.[10] The record was left open to obtain records from OMNI Pain Management, Joseph Gautreaux, M.D., Metairie Imaging-Elmwood MRI, and the Ochsner Medical Center.[11] The ALJ held a supplemental hearing to review the new records at Plaintiff's request.[12] The ALJ issued a decision in September 2023 holding that Plaintiff was not disabled within the definition of the SSA[13] between March 7, 2007, and the last date on which Plaintiff met the status requirements for disability insurance coverage (December 31, 2010).[14]

---

[7] *Id.* at 26.
[8] *Id.* at 26–27, 357.
[9] *Id.* at 14, 18–19.
[10] *Id.* at 14–15, 36, 192.
[11] *Id.* at 14.
[12] *Id.* at 14–15, 74, 258.
[13] *See* 42 U.S.C. §§ 416(i), 423(d).
[14] R. Doc. 3 at 11–28.

2

The ALJ conducted the five-step sequential analysis required by 20 C.F.R. § 404.1520 to consider a claimant's assertion of disability. As the Fifth Circuit has explained:

> The five steps consider: (1) Is the claimant "doing substantial gainful activity"? (2) If not, does the claimant "have a severe medically determinable physical or mental impairment" of sufficient duration? (3) If so, does her impairment(s) meet or equal a listing in Appendix 1 of the applicable regulations? (4) If not, considering the claimant's "residual functional capacity," can the claimant still do her "past relevant work"? (5) If not, can the claimant adjust to other work given her residual functional capacity, age, education, and work experience?

*Vasquez v. O'Malley*, 2024 WL 4381269, at *1 (5th Cir. Oct. 3, 2024) (quoting 20 C.F.R. § 416.920). At steps one through four, the burden of proof is on the claimant to show she is disabled. *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001). If the claimant can carry this burden through step three or four, she has established disability and the inquiry is over. *Id*. Otherwise, the burden shifts to the Commissioner at step five to prove the claimant nonetheless retains sufficient functional capacity to adjust to other employment. *Id*.

The ALJ found that Plaintiff satisfied steps one and two. First, Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability.[15] Second, Plaintiff suffered from several medical impairments, including cervical disc disease, mild lumbar scoliosis and osteoporosis, effects of pelvic fracture, right wrist tendinitis/de Quervain's tenosynovitis, and obesity.[16] The ALJ also concluded that Plaintiff suffered from additional impairments of chronic obstructive

---

[15] *Id*. at 18.
[16] *Id*. at 18–19.

pulmonary disease, bilateral greater trochanteric bursitis, bilateral rotator cuff tears, right knee degenerative changes, right trigger thumb and long finger, and right shoulder tendinosis, but only *after* the date of last insured.[17] Finally, the ALJ concluded that Plaintiff suffered from the non-severe impairments of fibromyalgia and headaches.[18] The ALJ determined, however, that Plaintiff did not satisfy step three because none of these impairments or any combination thereof met or equaled an impairment listed in Appendix One.[19]

Continuing to step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work with some limitations.[20] The ALJ determined that Plaintiff must avoid concentrated exposure to vibrations.[21] While Plaintiff's ability to perform all or substantially all of the requirements of skilled, light work was impeded by her additional limitations, the ALJ concluded that she nonetheless retained the functional capacity to successfully adjust to other work.[22]

---

[17] *Id.* The ALJ also noted that the additional impairments "do not reasonably relate back to the period prior to the date last insured." *Id.* at 18.

[18] *Id.* at 18–19. The ALJ reasoned that (1) the medical evidence does not reflect objective medical abnormalities to establish fibromyalgia or a primary headache disorder as medically determinable impairments and (2) Plaintiff did not indicate any history of or treatment for fibromyalgia during a July 2010 medical evaluation and self-reported that her occasional headaches were relieved by over-the-counter medication. *Id.* (first citing Soc. Sec. Ruling, Ssr 12-2p; Titles II & Xvi: Evaluation of Fibromyalgia, SSR 12-2P (S.S.A. July 25, 2012); then citing Soc. Sec. Ruling, Ssr 19-4p; Titles II & Xvi: Evaluating Cases Involving Primary Headache Disorders, SSR 19-4P (S.S.A. Aug. 26, 2019)).

[19] *Id.* at 18–19; *see also* 20 C.F.R. § 404, Subpt. P, App. 1.

[20] *Id.* at 19.

[21] *Id.*

[22] *Id.* at 26–28. The ALJ noted that Plaintiff could not perform her past relevant work as a lounge manager but determined that Plaintiff's age, education, and work

Therefore, it held that Plaintiff was not disabled during the period for which she claims entitlement to disability insurance benefits.[23]

Plaintiff asserts the ALJ failed to properly evaluate her proffered expert medical opinions and that such error resulted in a finding of residual functional capacity to perform light work that was not supported by the medical evidence.[24] Next, Plaintiff argues that the vocational expert testimony failed "to account for the full extent of [her] limitations," specifically as it relates to her "ability to engage in the identified jobs."[25] Lastly, Plaintiff claims ineffective assistance of counsel directly contributed to her inability to successfully demonstrate her disability and eligibility for benefits.[26]

## II. Standard of Review

This Court's review of a denial of social security benefits "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This must

---

experience qualified her to perform other, unskilled jobs that existed in significant numbers in the national economy. *Id*.
[23] *Id*. at 28.
[24] R. Docs. 9 at 4–5, 16 at 2–3.
[25] R. Doc. 9 at 5.
[26] *Id*. at 3.

constitute "more than a mere scintilla" of evidence but may be "less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment . . . even if [the Court concludes that] the evidence preponderates against" the ALJ's findings. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings to support" the denial of benefits. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citing *Johnson*, 864 F.2d at 343-44). If supported by substantial evidence, the ALJ's determination is conclusive and must be affirmed. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C. § 405(g)).

### III. Substantial evidence supports the ALJ's decision.

Plaintiff argues the ALJ's determination that she was not disabled is unsupported by medical evidence because the ALJ "failed to properly weigh" the medical opinions of Dr. Mark R. Mitchell and Dr. Joseph Gautreaux.[27] As directed by 20 C.F.R. § 404.1520c(b), the ALJ must consider all record medical opinions and prior administrative medical findings based on: (1) supportability, (2) consistency, (3) the physician's relationship with the claimant, (4) specialization, and (5) any other factors that tend to support or contradict a medical opinion or prior administrative medical finding. Because supportability and consistency are the most important factors, the

---

[27] R. Docs. 9 at 4, 16 at 2. Plaintiff also asserts the ALJ failed to weigh the 2013 opinion of Doctor "Forte," but the exhibit to which she cites contains no opinion from that individual. R. Doc. 16 at 2.

ALJ must explain its consideration of those factors in weighing and evaluating each medical opinion. 20 C.F.R. § 404.1520c(b)(2).

The supportability factor evaluates how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). "[S]upportability looks internally to the bases presented by the medical opinion itself." *Sharon H. v. Kijakazi*, No. 5:21-CV-167-H, 2022 WL 3951488, at *3 (N.D. Tex. Aug. 31, 2022).[28] Thus, "[i]n articulating how they considered the supportability factor, ALJs may note that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, [and] that the physician did not consider certain evidence, did not examine the claimant, or did not provide a detailed explanation for [their] opinion." *Guillory*, 2023 WL 9751083, at *3 (quoting *Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (collecting sources)). Consistency, on the other hand, is the "extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5853 (Jan. 18, 2017). "[C]onsistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals." *Sharon H.*, 2022 WL 3951488, at *3. The

---

[28] *See also Guillory v. Kijakazi*, No. 22-4135, 2023 WL 9751083, at *3 (E.D. La. Sept. 1, 2023), report and recommendation adopted, 2024 WL 711604 (E.D. La. Feb. 21, 2024).

greater a medical opinion's consistency with other medical sources or record evidence, the greater its persuasive value. 20 C.F.R. § 404.1520c(c)(2).

### A. The ALJ explained why the opinions of Plaintiff's physicians were not persuasive.[29]

Plaintiff argues that the ALJ failed to consider (1) Dr. Mitchell's March 2007 certification stating permanent impairment; and (2) Dr. Mogan's April 2012 examination which diagnosed fibromyalgia and multiple herniated discs and indicated "extreme limitations on [her] ability to perform work-related tasks.[30] Plaintiff also argues that, with respect to Dr. Gary F. Carroll's evaluation, "the ALJ's selective reliance on a single evaluation undermines the integrity of the decision-making process."[31] Thus, Plaintiff contends the ALJ's decision lacks substantial supporting evidence.[32]

In support of this argument, Plaintiff points to *Newton v. Apfel*, 209 F.3d 448, (5th Cir. 2000). In that case, the Fifth Circuit reversed and remanded an ALJ's decision because the ALJ summarily rejected the opinion of claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant, and failed to obtain clarification or supplemental information that could have otherwise been produced, if requested. *Id.* at 458. Remand was

---

[29] Plaintiff submitted various exhibits with her initial brief. *See* Docs. 9-1 through 9-11. This evidence is either outside the relevant period, already in the record (*e.g.*, R. Doc. 9-5), or cumulative of the evidence considered by the ALJ. Thus, it does not support her appeal. *See Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995).
[30] R. Doc. 9 at 3–4.
[31] R. Docs. 9 at 4, 16 at 2.
[32] R. Doc. 9 at 4–5.

necessary because the ALJ gave no weight to the treating physician's opinion and there was no competing first-hand medical evidence. *See id.*

The ALJ's discussion here, by contrast, contains an analysis of the opinions of Dr. Mitchell and Dr. Mogan:

> The Certification of Mobility Impairment completed by Dr. Mitchell is inherently neither valuable nor persuasive. Further, the April 2007 opinion of Dr. Michell is not persuasive because it does not articulate any specific functional limitations, is not supported by any accompanying objective findings, and is inconsistent with the other evidence, including the consultative evaluation performed by Dr. Carroll, which showed normal ambulation with no need for an assistive device as of July 2010.[33]
>
> The April 2012 opinion of Joseph Mogan, M.D. . . . is not persuasive. This opinion was completed well after the date last insured and is unsupported by the objective findings pertinent to the period prior to the date last insured, including the March 2007 MRI of the claimant's lumbar spine reflecting only mild findings and without nerve involvement . . . Further, the extreme limitations set forth by Dr. Mogan are inconsistent with the other evidence for the period prior to the date last insured, including the consultative evaluation performed by Dr. Carroll, who reported normal gait, only mildly impaired ranges of motion, and reduced grip strength but with normal dexterity and grasping abilities bilaterally.[34]

Thus, the ALJ explained that it found (1) Dr. Mitchell's certification unpersuasive because it was inconsistent with Dr. Carroll's evaluation and (2) Dr. Mogan's opinion unpersuasive because it fell outside the period at issue (March 7, 2007, to December 31, 2010) and was inconsistent with evidence from that time period.[35] In doing so,

---

[33] R. Doc. 3 at 26.
[34] *Id.* at 26.
[35] R. Doc. 3 at 25–26. In her initial brief, Plaintiff argued that, while the March 2007 MRI revealed relatively mild disc generation, significant deterioration and nerve involvement "developed after the date last insured." R. Doc. 9 at 5. In her reply, Plaintiff maintains that "the origin of all this is my 2002 accident injuries . . . ." R.

the ALJ established good cause to discount the opinions of Dr. Mitchell and Dr. Mogan. *See Newton*, 209 F.3d at 455–56 (citing *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999); *Greenspan*, 38 F.3d at 237).

The ALG found greater consistency and supportability, and thus greater persuasive value, in the July 15, 2010 consultative evaluation by Dr. Carroll. Dr. Carroll reported that Plaintiff "ambulated with a normal gait" and did not require assistive devices.[36] He added that Plaintiff "reported no impairment in her station or gait but endorsed diminished grip strength in her right hand."[37] He noted that while her grip strength was rated three-out-five on one hand and four-out-of-five on the other, she had "normal dexterity and grasping ability."[38] Plaintiff reported to Dr. Carroll that she was able to drive, use public transportation, shop, and visit family and friends.[39] This is thus not a case where "no credible evidentiary choices or medical findings support" the ALJ's decision. *Harris*, 209 F.3d at 417. The ALJ's denial of benefits to Plaintiff is supported by substantial evidence and must be affirmed.

Lastly, Plaintiff argues that the ALJ did not consider the "whole story" because there are records from the relevant time period showing "how bad things were."[40] Yet the ALJ concluded that Plaintiff had severe impairments through the date last

---

Doc. 16 at 4. The ALJ properly considered the evidence in connection with the relevant time period.
[36] R. Doc. 3 at 22.
[37] *Id.* In August 2010, Plaintiff presented to an emergency room and was diagnosed with tendonitis of the right wrist. *Id.* at 23.
[38] *Id.* at 22.
[39] *Id.*
[40] R. Doc. 18 at 2.

10

insured.[41] He determined, however, that those impairments left her still able to adjust to certain work.[42] The ALJ's finding that Plaintiff's impairments were severe "did not foreclose a finding that [she] had residual functional capacity to perform a range of light work, and is not necessarily inconsistent with that finding." *Boyd v. Apfel*, 239 F.3d 698 (5th Cir. 2001). Thus, the Court finds no error in the ALJ's decision.

### B.   The vocational expert considered the limitations supported by evidence and found by the ALJ.

Plaintiff maintains that there were discrepancies between the vocational expert's testimony and the extent of the limitations established by Plaintiff's medical history.[43] The ALJ presented a series of hypothetical questions that incorporated the limitations recognized by the ALJ. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ's finding that the claimant could perform certain jobs as testified to by the vocational expert was supported by substantial evidence where "the ALJ scrupulously incorporated into the hypothetical questions [to the VE] all of [the claimant's] disabilities supported by evidence and recognized by the ALJ"); *Pineda v. Astrue*, 289 F. App'x 710, 714 (5th Cir. 2008) ("The ALJ correctly described [the claimant's] limitations to the [VE], so we should accord weight to his testimony delineating jobs that met [the claimant's] exertional and other capabilities."). In

---

[41] R. Doc. 3 at 18.
[42] R. Doc. 3 at 27–28.
[43] R. Doc. 9 at 5.

response to these hypothetical questions, the vocational expert confirmed that Plaintiff could engage in light work.[44]

Next, at Plaintiff's suggestion,[45] the ALJ asked the expert whether a hypothetical individual could perform those same jobs if she could only occasionally handle and finger.[46] The expert responded that this limitation would eliminate all jobs. Plaintiff did not pursue any cross-examination nor suggest that the ALJ ask any additional hypothetical questions.

Construed generously, Plaintiff now argues that the vocational expert's testimony as to a hypothetical limitation that allowed only occasional handling and fingering confirms that Plaintiff could not perform even light work. But this proposed hypothetical scenario relied on Plaintiff's own assessment of her limitations. Fifth Circuit jurisprudence confirms that an ALJ's hypotheticals need only address the disabilities "supported by evidence and recognized by the ALJ." *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002). Thus, the ALJ did not err in relying on vocational expert testimony that was consistent with the ALJ's assessment of Plaintiff's residual functional capacity.

### III. Plaintiff's complaints about her counsel are unavailing.

Plaintiff claims ineffective assistance of counsel "deprived [her] of a fair assessment and consideration of [her] case's merits."[47] Yet Plaintiff was

---

[44] R. Doc. 3 at 66–69.
[45] Plaintiff was unrepresented at this stage.
[46] R. Doc. 3 at 69.
[47] R. Doc. 9 at 3.

unrepresented at the first hearing. The ALJ then left the record open to allow the submission of additional evidence. Plaintiff retained counsel and submitted additional evidence. That evidence was considered in the ALJ's decision.[48] Even assuming Plaintiff's complaints about her counsel could be transformed into a cognizable argument on appeal,[49] Plaintiff has identified no error that prejudiced her.

## IV. Recommendation

For the foregoing reasons,

**IT IS RECOMMENDED** that the decision of the Administrative Law Judge be **AFFIRMED** and that Plaintiff's appeal be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

---

[48] R. Doc. 3 at 15.
[49] "The United States Supreme Court has never recognized a constitutional right to counsel in Social Security proceedings." *Riley v. Berryhill*, No. 5:18-CV-130-DCB-MTP, 2019 WL 8106228, at *3 (S.D. Miss. Dec. 30, 2019) (quoting *Cornett v. Astrue*, 261 F. App'x 644, 651 (5th Cir. 2008), report and recommendation adopted, No. 5:18-CV-130-DCB-MTP, 2020 WL 955300 (S.D. Miss. Feb. 27, 2020).

New Orleans, Louisiana, this 11th day of September, 2025.

_____
**EVA J. DOSSIER**
**UNITED STATES MAGISTRATE JUDGE**